IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00551-LTB-CBS

STEVEN D. HARRINGTON,
     Applicant,
v.

LARRY REID, Warden, and
KEN SALAZAR, Attorney General of the State of Colorado,
     Respondents.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action is before the court on Harrington's "Amended Memorandum of Law in Support of Applicant's Writ of Habeas Corpus Petition Pursuant to 28 U.S.C. Section 2254" ("Amended Petition") (filed August 18, 2005) (doc. # 49).[1]  Pursuant to the Special Order of Reference dated April 8, 2004 (doc. # 5) and the Amended Order of Reference dated July 7, 2004 (doc. # 14), this civil action was referred to the Magistrate Judge "for recommendation on petitioner's Application for a Writ of Habeas Corpus . . . ."  The court has reviewed the Amended Petition, Respondents' Answer (filed May 26, 2004) (doc. # 8), Respondents' Supplement to Answer (filed September 8, 2005) (doc. # 51), Harrington's Response Supplement to Answer (filed September 21, 2005) (doc. # 52), the pertinent parts of the state court record, the entire case file, and the applicable law, and is sufficiently advised in the premises.

I.      Background

Harrington is currently incarcerated at the Colorado Department of Corrections in Canon City, Colorado.  On June 8, 1994, after a highly publicized trial to a jury, Harrington was convicted of "first degree murder, criminal attempt first degree murder, first degree assault, second degree kidnapping, aggravated robbery, first degree aggravated motor vehicle theft," and "criminal attempt first degree sexual assault." (*People v. Harrington*, 94CA1602 at p. 1 (Colo. App. May 15, 1997) (not selected for publication) ("*Harrington I*") (attachment to Petition)).  The judgment of conviction was entered on June 10, 1994.  (*See* Petition at p. 1).  On August 8, 1994, Harrington was sentenced to life imprisonment plus a consecutive term of 208 years.  (*See* Petition at p. 2).

On direct appeal, a division of the Colorado Court of Appeals ("Court of Appeals") affirmed Harrington's conviction.  (*Harrington I*).  The Colorado Supreme Court denied Harrington's Petition for Writ of Certiorari on January 12, 1998.  (Order of Court attached to Respondents' Answer).  The Court of Appeals issued its mandate on February 17, 1998.  (Mandate attached to Respondents' Answer).

Harrington filed a *pro se* motion for postconviction relief pursuant to Crim. P. 35(c) on August 19, 1998, claiming ineffective assistance of trial counsel.  (*See* Record, Vol. 2 at p. 262;  Integrated Colorado Online Network ("ICON") printout in Case No. 1993 CR 002915).  On August 28, 1998, the trial court appointed counsel to represent Harrington on his Crim P. 35(c) motion.  (*See* Record, Vol. 2 at p. 270; ICON

printout in Case No. 1993 CR 002915).  On May 18, 1999, the trial court permitted

Harrington's post-conviction counsel to withdraw, at Harrington's request.  (*See*

Record, Vol. 2 at p. 281; ICON printout in Case No. 1993 CR 002915)  On July 29,

1999, the trial court denied Harrington's original Crim P. 35(c) motion.  (*See* ICON

printout in Case No. 1993 CR 002915).  On August 20, 1999, Harrington filed a *pro se*

renewed motion for postconviction relief pursuant to Crim. P. 35(c).  (*See* Record, Vol.

2 at p. 298; ICON printout in Case No. 1993 CR 002915).  On August 23, 2999, the trial

court denied Harrington's renewed Crim. P. 35(c) motion.  (*See* Record, Vol. 2 at p.

306; ICON printout in Case No. 1993 CR 002915).  The Court of Appeals reversed the

trial court's order denying Harrington's Crim. P. 35(c) motion and remanded to the trial

court to make findings of fact pursuant to Crim. P. 35(c)(3).  (*People v. Harrington*,

99CA1752 (Colo. App. Nov. 30, 2000) (not selected for publication) ("*Harrington II*")

(Record, Vol. 2 at p. 344).  The Court of Appeals denied Appellee's Petition for

Rehearing on January 25, 2001.  The Court of Appeals issued its mandate on February

17, 2001.

On remand, the trial court issued an order on June 26, 2001, denying without a

hearing Harrington's two Crim. P. 35(c) motions.  (Court's Order Re: 35(c) Remand

dated June 26, 2001 (attachment to Petition and Record, Vol. 2 at p. 338)).  Harrington

appealed the denial of his Crim. P. 35(c) motions.  (Record, Vol. 2 at p. 342).  On June

12, 2003, the Court of Appeals affirmed the trial court's ruling.  (*People v. Harrington*,

01CA1800 (Colo. App. June 12, 2003) (not published pursuant to C.A.R. 35(f))

("*Harrington III*") (Record, Vol. 2 at p. 379)).  On August 11, 2003, the Court of Appeals

3

denied Harrington's Petition for Rehearing.  The Colorado Supreme Court denied

Harrington's Petition for Writ of Certiorari on December 22, 2003.  (Order of Court

(attached to Petition and Record, Vol. 2 at p. 385)).  The Court of Appeals issued its

mandate on January 3, 2004.  (Mandate attached to Petition and Record, Vol. 2 at p.

387).

Harrington filed his original petition for writ of habeas corpus in federal court on

March 23, 2004.  On June 16, 2004, the court appointed counsel to represent

Harrington in this civil action.  In an Order dated July 9, 2004, the court permitted

Harrington to file an amended petition for writ of habeas corpus.  Harrington filed his

Amended Petition on August 18, 2005.


II.    Analysis

Harrington raises ten claims in the Amended Petition, several of which include

subparts:

> 1.     he "was denied his right to a fair trial and due process of law pursuant to
> the Fifth and Fourteenth Amendments due to the state trial court's failure to
> sever Harrington from that of [sic] his co-defendant Davis;"
>
> 2.     he "was denied his right to a fair trial and due process of law pursuant to
> the Fifth and Fourteenth Amendments due to the state trial court's ruling to
> permit a Denver Police Sgt [sic] to testify as an expert in gang activities;"
>
> 3.     he "was denied his right to a fair trial and due process of law pursuant to
> the Fifth and Fourteenth Amendments due to the state trial court permitting the
> introduction of highly prejudicial gang related evidence;"
>
> 4.     he "was denied his equal protection rights pursuant to the Fifth and
> Fourteenth Amendments as a result of the state's discriminatory exercise of its
> peremptory challenges;"

5.      he "was denied his right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments due to jury misconduct;"

6.      he "was denied his right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments as a result of the state trial court admitting eyewitness identification of him;"

7.      he "was denied his right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments due to the state's suppression of material evidence pursuant to the <u>Brady</u> doctrine;"

8.      he "was denied his right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments as a result of the state trial court allowing a physician to testify as an expert outside of his defined area of expertise;"

9.      he "was denied his right to effective assistance of counsel during trial and during post-conviction proceedings in violation of the Sixth Amendment to the United States Constitution;"

10.     he "was denied his right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments due to the state court's failure to provide for an evidentiary hearing during Applicant's Rule 35(c) proceedings."

(Amended Petition at pp. 4-5).


A.      One-Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Amended Petition under the

one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).


B.      Exhaustion of State Remedies and Procedural Default

"A threshold question that must be addressed in every habeas case is that of

exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994).  Before a state

prisoner may raise a federal constitutional claim attacking his state conviction in a

5

federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he or she must have first exhausted state remedies and provided the state courts with a fair opportunity to apply controlling legal principles to facts bearing on the constitutional claims. *Miranda v. Cooper*, 967 F.2d 392, 397 (10th Cir. 1992). This principle has been codified in 28 U.S.C. § 2254(b)(1).

Exhaustion requires that a habeas corpus petitioner "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The exhaustion requirement is satisfied when the state courts have had "one full opportunity" to pass upon and correct alleged constitutional violations. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A claim must be presented not only to the trial court but also to the state's intermediate court as well as to its supreme court. *O'Sullivan*, 526 U.S. at 845-47. It is not sufficient that the claim asserted in a federal habeas application is somewhat similar to one presented to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Additionally, in order to meet the exhaustion requirements of § 2254(b)(1), the claim advanced pursuant to federal habeas must have been submitted to the state courts as one arising under the federal constitution.

As a threshold matter, Respondents contend that Harrington has failed to exhaust his state court remedies as to all but four of his claims or subparts of claims, that Harrington is now procedurally barred from bringing these issues before the state courts, and that these claims should be dismissed with prejudice due to procedural default. The court agrees that all but four claims or subparts of claims have not been

exhausted and are procedurally defaulted.

The presence of even one unexhausted claim results in a "mixed petition." Such a petition must be dismissed. *Pliler v. Ford*, 542 U.S. 225, 124 S.Ct. 2441, 2444 (2004) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). "[A] district court faced with a habeas petition containing unexhausted claims may either (1) dismiss the entire petition without prejudice in order to permit exhaustion of state remedies, or (2) deny the entire petition on the merits." *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002). The court need not and does not address the applicability of Colorado's procedural bar to Harrington's claims because the case may be more easily and succinctly decided on the merits. *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 1992) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991) ("In the present case, it is in the interest of judicial economy for this court to hear this cause in spite of the unresolved issues of exhaustion and procedural default"). *See also United States v. Wright*, 43 F.3d 491, 496 (10th Cir.1994) (addressing a 28 U.S.C. § 2255 petition and declining to address the procedural bar issue because the claim would fail on the merits in any event)). Thus, the court proceeds to examine all of Harrington's claims on the merits.

C.     Merits of Harrington's Claims

1.     Standard of Review

Harrington filed this habeas proceeding after the April 24, 1996 effective date of the AEDPA. Consequently, federal review of the Amended Petition is governed by the standards set out in 28 U.S.C. § 2254(d) and (e), as amended by the AEDPA. *Williams*

*v. Taylor*, 529 U.S. 362, 402 (2000).  *See also Price v. Vincent*, 538 U.S. 634, 638

(2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is

not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. §

2254(d)").

Section 2254(d) provides that a writ of habeas corpus may not be issued with

respect to any claim that was adjudicated on the merits in state court unless the state

court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. 2254(d).  The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law
> if it "applies a rule that contradicts the governing law set forth in our
> cases, or if it "confronts a set of facts that are materially indistinguishable
> from a decision of this Court and nevertheless arrives at a result different
> from our precedent. . . ."

*Price*, 538 U.S. at 640.  In determining whether the state court decision "involved an

unreasonable application of clearly established Federal law,"

> a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the state-court decision
> applied [a Supreme Court case] incorrectly. Rather, it is the habeas
> applicant's burden to show that the state court applied [that case] to the
> facts of his case in an objectively unreasonable manner."

*Price*, 538 U.S. at 640-41 (internal quotation marks and citations omitted).

When applying § 2254(d)(2), "the factual issues decided by the [state] court are

presumed to be correct and [Harrington] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)), *cert. denied*, 540 U.S. 833, 124 S. Ct. 80 (2003).  *See also Fields v. Gibson*, 277 F.3d 1203, 1215-16 (10th Cir.) (If the court treats the issue as a factual determination under § 2254(d)(2) and (e)(1), it must ask whether the petitioner has "rebutted the presumption of correctness by showing, by clear and convincing evidence, that the state court's decision was an unreasonable determination of the facts"), *cert. denied*, 537 U.S. 1023, 123 S. Ct. 533 (2002).

2.     Analysis

       a.     Harrington's First Claim

       Harrington alleges that the state trial court erred in failing to sever his trial from co-defendant Davis' trial.  (*See* Amended Petition at pp. 4, 16-17).  The Court of Appeals found that a single statement by Davis' counsel during her opening statement did not render Harrington's and Davis' defenses antagonistic and that the trial court had properly exercised its discretion in denying Harrington's request for severance. (*Harrington I* at pp. 13-14).

       "Whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas . . . ."  *Cummings v. Evans*, 161 F.3d 610, 618-19 (10th Cir. 1998) (citation omitted).  "Improper joinder does not, in itself, violate the Constitution."  *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986).  "The United States Supreme Court has declined to mandate severance any time

9

co-defendants have conflicting defenses." *Brown v. Dretke*, 419 F.3d 365, 372 (5th Cir.

2005) (*citing Zafiro v. United States*, 506 U.S. 534, 538-39 (1993)).  *See also Stanford*

*v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001) (habeas relief is not warranted for failure to

sever "merely because defendants present antagonistic defenses").

    "[A] criminal defendant has no constitutional right to severance unless there is a

strong showing of prejudice caused by the joint trial."  *Cummings*, 161 F.3d at 619

(citation omitted).  Severance should be granted "only if there is a serious risk that a

joint trial would compromise a specific trial right of one of the defendants, or prevent the

jury from making a reliable judgment about guilt or innocence."  *Brown*, 419 F.3d at 372

(*quoting Zafiro*, 506 U.S. at 539).  *See also United States v. McClure*, 734 F.2d 484,

487 (10th Cir. 1984) ("To establish that a trial court abused its discretion by denying a

defendant's request for severance, a defendant must show that actual prejudice

resulted from the denial") (citation omitted).  To make a showing of prejudice caused by

a joint trial, "the defendant must necessarily disclose sufficient information to enable

the court to make a finding of prejudice."  *Cummings*, 161 F.3d at 619.

    Harrington makes no specific allegation of prejudice beyond the general

argument that his and Davis' defenses were antagonistic.  Harrington and Davis both

denied involvement in the crimes.  Harrington's defense was alibi and mistaken identity.

(*See, e.g.,* Jury Instruction No. 5, trial transcript June 8, 1994 at p. 10).  Davis' defense

was that he was not present at the scene of the crimes.  (*See, e.g.,* Jury Instruction No.

4, trial transcript June 8, 1994 at p. 10).  Acceptance by the jury of one defense did not

preclude acceptance of the other defense.  The jury was not required to find one guilty

in order to find the other was not involved.  A mere attempt by one codefendant to cast blame on the other is not in itself a sufficient reason to require separate trials. *McClure*, 734 F.2d at 488.  Severance is not required simply because separate trials might have offered a better chance for acquittal to one or more of the accused. *McClure*, 734 F.2d at 488.

"[R]ather than sever a defendant's trial from that of a co-defendant, the trial court may simply provide a limiting instruction to cure any risk of prejudice." *Brown*, 419 F.3d at 372 (*citing Zafiro*, 506 U.S. at 539).  The jury was repeatedly warned to consider the evidence only in relation to the defendant for or against whom it was admitted.  (*See, e.g.,* trial transcript May 24, 1994 at pp. 173, 305-06;  trial transcript June 3, 1994 at pp. 29, 150; trial transcript June 6, 1994 at p. 174).  The case was not so complex as to confuse the jury.  There were only two Defendants in the case.  The jury was instructed that it must deliver a verdict as to each defendant as if he were being tried separately. (Trial transcript June 8, 1994 at pp. 13-14).  Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration. *See Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985) ("we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions").  There is no basis in the record to infer that the jury would not follow the trial court's admonitions and improperly use evidence admitted only against Davis to convict Harrington.

Because Harrington has not shown that "there [was] a serious risk that a joint trial . . . compromise[d] a specific trial right . . . or prevent[ed] the jury from making a

11

reliable judgment about guilt or innocence."  *Brown*,  419 F.3d at 373 (*quoting Zafiro*,

506 U.S. at 539), this claim does not warrant habeas relief.

b.      Harrington's Second and Third Claims

Harrington alleges that the trial court erred by permitting Denver Police Sergeant

Spenard to testify as an expert in gang activities and by admitting gang-related

evidence.  (*See* Amended Petition at pp. 4-5, 17-19).  Harrington argues that the

prejudicial effect of the evidence substantially outweighed its probative value.  On

direct appeal, the Court of Appeals concluded that the evidence was properly admitted

for the limited purpose of showing identity.  (*Harrington I* at pp. 12-13).

Federal courts do not grant habeas relief for errors of state law.  *Estelle v.

McGuire*, 502 U.S. 62, 67 (1991).  "Federal habeas review is not available to correct

state law evidentiary errors; rather it is limited to violations of constitutional rights."

*Thornburg v. Mullin*, 422 F.3d 1113, 1128-29 (10th Cir. 2005) (quoting *Smallwood v.

Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999)).  A state court ruling on an evidentiary

matter only warrants federal habeas relief when it renders the trial so fundamentally

unfair as to deny the defendant his right to due process.  *Mayes v. Gibson*, 210 F.3d

1284, 1293 (10th Cir. 2000) (citation omitted).  The appropriate inquiry is thus whether

the admission of the challenged evidence "rendered the proceeding fundamentally

unfair."  *Thornburg*, 422 F.3d at 1129 (citation omitted).

Federal courts have ruled that evidence of gang affiliation is admissible when

12

relevant to the issue of identity, as well as other issues. *United States v. Easter*, 66 F.3d 1018, 1020-21 (9th Cir.1995). *See also United States v. Abel,* 469 U.S. 45, 49 (1984) (gang affiliation admissible to impeach for bias); *United States v. Brown*, 200 F.3d 700, 708-09 (10th Cir. 1999) (gang affiliation evidence admitted as to issues of identity, joint venture, and existence of a conspiracy); *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996) ("Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue"); *United States v. Sloan*, 65 F.3d 149, 151 (10th Cir. 1995) (gang activity evidence admitted to "show the basis of the relationship between the defendant and witnesses"); *United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992) (holding that gang membership "helped to establish an agreement among the subjects, the purpose of the conspiracy and knowledge on the part of these defendants").

Harrington's defense at trial was alibi and mistaken identity. (*See, e.g.,* Jury Instruction No. 5, trial transcript June 8, 1994 at p. 10). The gang-related evidence "focused on the signs, dress, language, and appearance of gang members, particularly those of a specific gang." (*Harrington I* at p. 13). The evidence was probative of the issue of identity. The evidence was probative as to witnesses' descriptions of the perpetrators of the murder, physical evidence in the case, statements of the perpetrators heard by witnesses, the relationship between the perpetrators, and identifying characteristics of the perpetrators, among other things. The record demonstrates the probative value of the gang-related evidence under the facts of this case.

The trial court repeatedly instructed the jury that the gang-related evidence was being admitted only for the limited purpose of proving identity. (*See, e.g.,* trial transcript May 20, 1994 at p. 143;  May 24, 1994 at pp. 143-44, 206-07;  May 25, 1994 at pp. 13, 84;  May 26, 1994 at pp. 38, 83-84;  May 31, 1994 at pp. 155, 247-48;  June 8, 1994 at pp. 15-16 (Jury Instructions No. 17 and No. 18)).  The trial court repeatedly instructed the jury:

> "you will hear testimony . . . about the defendants' alleged gang affiliation, conduct and/or dress. . . . It is not a crime to belong to a gang, and the Defendants are entitled to be tried solely on the crimes charges in the complaint.  You may consider this evidence, so far as you determine it important only on the issue of determining the identity of the perpetrators of these offenses.  You may give the evidence as much of as little weight as you deem appropriate on the issue of identity, but you may not consider it for any other purpose."

*Id.* Contemporaneous to Sergeant Spenard's testimony, the trial court again instructed the jury that the gang-related evidence was being admitted only for the limited purpose of proving identity.  (*See* trial transcript June 2, 1994 at p. 223).  There is no basis in the record to infer that the jury would not follow the trial court's admonitions and the jury instructions.

The admission of Sergeant Spenard's testimony and gang-related evidence was a matter of state law.  Harrington fails to show that he was denied either a specific constitutional right or a fundamentally fair trial.  Harrington is not entitled to habeas relief on his second or third claims.


     c.     Harrington's Fourth Claim

14

Harrington claims that the prosecution exercised its peremptory challenges to systematically exclude minorities and males from the jury, thereby depriving him of his right to equal protection.

> For this highly publicized trial, the court summoned a panel of 200 prospective jurors who completed a two-page questionnaire. The trial court reviewed the questionnaires and divided the panel into three groups. One group was eliminated for cause based solely on the questionnaire answers. A second group was brought in for individual sequestered voir dire regarding hardships, pretrial publicity, exposure to gangs or crimes, and other sensitive matters. Some members of this group were excused for cause.
>
> The remaining jurors from the second group and those in the third group were brought into full court voir dire. . . .
>
> Later, an additional 16 prospective jurors were questioned. Then the prosecution exercised seven more peremptory challenges, the last five of which excluded two Hispanic and three African-American individuals. Defendant's assertions of error concern the trial court's rulings concerning these challenges.

(*Harrington I* at pp. 2-3). Harrington alleges that the trial court erred by: (1) allowing the prosecution more than one opportunity to explain its peremptory challenges and (2) failing to specifically determine whether the prosecution's explanations were legitimate or pretextual. (*See* Amended Petition at pp. 5, 20-22).

The Supreme Court has "held that the Fourteenth Amendment's Equal Protection Clause prohibits the prosecution's use of peremptory challenges to exclude potential jurors on the basis of their race." *Saiz v. Ortiz*, 392 F.3d 1166, 1171 (10th Cir. 2004) (citing *Batson v. Kentucky*, 476 U.S. 79, 86 (1986)), *cert. denied*, 125 S. Ct. 2976 (2005). "The Court extended that same prohibition to peremptory challenges used to exclude potential jurors because of their gender." *Saiz*, 392 F.3d at 1171 (citing *J.E.B. v. Alabama*, 511 U.S. 127, 130-31 (1994)).

15

"The Court articulated a three-part procedure to evaluate claims that the prosecution impermissibly used its peremptory jury challenges:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Saiz*, 392 F.3d at 1171 (citations omitted).  "The party objecting to the use of peremptory strikes, [Harrington] in this case, ‹carries the ultimate burden of persuasion.' " *Saiz*, 392 F.3d at 1171 (citations omitted).

As here, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges . . . , the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359 (1991).  The prosecution presented to the trial court copies of all the relevant prospective juror selection questionnaires as well as its jury selection chart to demonstrate that the exclusions from the venire were consistent with relevant and gender-neutral criteria.  The trial court determined that the prosecution had articulated racially neutral reasons for its peremptory challenges and concluded that there was no purposeful discrimination.

> The trial court ruled that defendant had made a prima facie showing regarding exclusion of minorities, satisfying the first step of Batson.  The prosecutor provided explanations and, after a brief recess, asked and was permitted to clarify the record by providing additional justification.  Because it was late in the afternoon, the trial court requested that the prosecutors prepare a statistical analysis of the jury questionnaires, the prospective jurors, and the prosecutors' challenges.
> The following morning the prosecutors who had participated in the

16

contested challenges produced a chart listing the characteristics of both the challenged and unchallenged members of the venire.  A different prosecutor then explained the reasoning underlying each exclusion or inclusion.

Defense counsel gave detailed rebuttal, and the prosecutor was allowed to reply.  The trial court then ruled that the defense had not met its burden of proving purposeful racial discrimination and denied the <u>Batson</u> challenge.

(*Harrington I* at pp. 3-4).  The Court of Appeals found that the trial court made a thorough analysis of the totality of the circumstances and agreed with the trial court that the prosecution's explanations were not based on race or gender and thus did not deny equal protection.  (*Harrington I* at pp. 4-7).  The appellate court also found no error in allowing the prosecution more than one opportunity to explain its peremptory challenges.  (*Harrington I* at pp. 7-8).

The court first analyzes the prosecutor's explanation for his actions for facial validity.  *Hernandez*, 500 U.S. at 360.  "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."  *Hernandez*, 500 U.S. at 360.  "An explanation for the strike is race-neutral so long as the reason is related to the case and 'does not deny equal protection.' "  *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 855 (10th Cir. 2000) (quoting *Purkett v. Elem*, 514 U.S. 765, 769 (1995).  "It is, after all, the racial motives of the attorney attempting to exercise the challenge that are being evaluated, not whether the reasons given or the manner in which the reasons were articulated conforms to the court's idea as to how voir dire should proceed."  *Heno*, 208 F.3d at 855.

Next, the court reviews the trial court's ultimate factual findings on whether the

prosecutor intentionally discriminated.  "The disposition of a *Batson* claim is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2)."  *Saiz*, 392 F.3d at 1175 (internal quotation marks and citation omitted).  Thus, "the factual issues decided by the [state] court are presumed to be correct and [Harrington] bears the burden of rebutting this presumption by clear and convincing evidence."  *Le v. Mullin*, 311 F.3d at 1010 (citation omitted).

Harrington contends that the trial court erred in "blind[ly] accept[ing]" the prosecution's explanations without adequately addressing all the facts.  (*See* Amended Petition at p. 21).  To the contrary, the record demonstrates that the trial court conducted lengthy proceedings and a thorough analysis of Harrington's challenge to the prosecution's peremptory strikes.  (*See, e.g.*, hearing transcript May 19, 1994 at pp. 5-173).  The trial court made detailed findings and specifically determined that the totality of the circumstances did not establish a denial of equal protection.  Harrington's contention is unsupported by the record.

Harrington provides no legal authority for his argument that the trial court erred in affording the prosecution more than one opportunity to explain its peremptory strikes. In the midst of a long and complex trial, the trial court spent many hours reviewing the issues raised by Harrington pursuant to *Batson*.  The court was required to evaluate a three-day *voir dire* process that included hundreds of questions, approximately two hundred two-page juror questionnaires, and lengthy *in camera* proceedings.  In response to the Defendants' challenges, the prosecution provided explanations for each and every peremptory strike it made and defense counsel attempted to rebut the

18

explanation for each and every strike.  When issues arose late in the day, the court

devoted additional time to those issues on the following day.  This court can find no

error in the trial court's efforts to carefully analyze Harrington's challenges to the jury

selection process and ensure a complete record.  (*See, e.g.,* hearing transcript May 19,

1994 at pp. 117-19).

The state courts applied the proper procedural framework of the *Batson* test and

did not err in concluding that the totality of the circumstances failed to establish a

denial of equal protection.  Harrington has not presented clear and convincing

evidence to show that the state court made an unreasonable determination of the facts.

Harrington is not entitled to habeas relief on this claim.


d.      Harrington's Fifth Claim

Harrington alleges that the state court erred in denying his motion for a mistrial

based on jury misconduct.  (*See* Amended Petition at pp. 5, 22-24).  First, during the

trial,

> a juror complained to the trial court that another juror was making grunting
> and heavy sighing noises during testimony.  This individual also stated
> that, during a recess, two jurors had asked her the meaning of 'Jheri curl,'
> a term used during defendant's cross-examination of one of the
> identification witnesses.  Further, one of these two jurors had stated that a
> witness should have 'married [the co-defendant] and saved herself some
> trouble.'

(*Harrington I* at p. 15).[2]  Second, later in the trial, a dismissed juror

> telephoned a remaining juror and began to discuss her inability to defend
> herself concerning her dismissal.  The juror replied that they should not
> be talking about these matters and changed the subject.  Later, the juror

> advised the court of the conversation and stated that this brief
> conversation did not affect her ability to review fairly the evidence
> presented at trial.

(*Harrington I* at p. 16).  On direct appeal, the Court of Appeals found that the "jurors

demonstrated extreme sensitivity to obeying the court's orders concerning out-of-court

discussions of the case" and concluded that the trial court did not abuse its discretion

when it denied Harrington's motions for a mistrial based on jury misconduct.  (*See

Harrington I* at p. 16).

The Sixth Amendment to the United States Constitution, made applicable to the

States through the Due Process Clause of the Fourteenth Amendment, provides that

"[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an

impartial jury . . . ."  U.S. Const. amend. VI.  Due process requires that a defendant

have "a jury capable and willing to decide the issue solely on the evidence before it."

*Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also Peters v. Kiff*, 407 U.S. 493, 501

(1972) (a defendant has a "due process right to a competent and impartial tribunal").

The Supreme Court has held "that an impartial jury consists of nothing more than 'jurors

who will conscientiously apply the law and find the facts.' "  *Lockhart v. McCree*, 476

U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)).

"The Supreme Court has held repeatedly that a jury's verdict 'must be based

upon the evidence developed at the trial.' "  *Vigil v. Zavaras*, 298 F.3d 935, 940 (10th

Cir. 2002) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  "[U]nder the Sixth and

Fourteenth Amendments, 'trial by jury in a criminal case necessarily implies at the very

least that the evidence developed against a defendant shall come from the witness

20

stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.' " *Vigil*, 298 F.3d at 940 (quoting *Turner v. Louisiana*, 379 U.S. 466, 472-73 (internal quotation marks omitted)).  "[I]n the habeas corpus context, a federal court may grant relief only where the alleged [jury] misconduct 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Vigil*, 298 F.3d at 940 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The Tenth Circuit has indicated that "[w]hen a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of prejudice, if any, to the defendant." *United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir.1988) (citing *Remmer v. United States*, 347 U.S. 227, 229-30 (1954)).  In a hearing with all parties present, the trial court should determine the circumstances, impact on the juror, and whether or not the communication was prejudicial.  *United States v. Gigax*, 605 F.2d 507, 515 (10th Cir. 1979).

After a juror reported her concerns about the first matter, the trial court conducted a *Remmer*-type *in camera* hearing during the trial.  (*See* trial transcript May 26, 1994 at pp. 147-252).  The trial court questioned each juror separately and each juror stated either that he or she did not hear the comments or that if he or she heard a comment, it did not affect his or her ability to be fair and impartial in judging the evidence at trial.  (*See* trial transcript May 26, 1994 at pp. 169-70, 173-77, 179-80, 182-83, 185-92, 195-97, 199-201, 203-06, 209-12, 213-20, 221-24, 224-28).  The jurors

stated that they could continue to impartially judge the evidence presented at trial.

(*See* trial transcript May 26, 1994 at pp. 157, 190-91, 197, 206-07, 210-12, 218-20,

223, 226-27).  At the conclusion of its inquiries, the trial court determined that jurors

Cuppy and Arnold had demonstrated an inability to judge the case fairly and impartially.

The trial court excused jurors Cuppy and Arnold.  (*See* trial transcript May 26, 1994 at

pp. 241, 246-48).  Harrington moved for a mistrial.  (*See* trial transcript May 26, 1994 at

pp. 168, 178, 193, 198, 238).  The trial court denied Harrington's motion for a mistrial.

(*See* trial transcript May 26, 1994 at p. 241).

On May 31, 1994, a juror reported to the trial court the second matter: that

former juror Arnold had telephoned her over the weekend and attempted to discuss her

dismissal from the jury.  The juror stated that she immediately told former juror Arnold

that she could not discuss the matter and changed the subject.  (*See* trial transcript

May 31, 1994 at pp.  15-17).  Upon inquiry by the court, the juror "stated that this brief

conversation did not affect her ability to review fairly the evidence presented at trial."

(*Harrington I* at p. 16).  Harrington moved for a mistrial, which the court denied.  (*See*

trial transcript May 31, 1994 at p. 20).

The trial court's decision as to how to proceed in response to allegations of juror

misconduct will not be reversed except for abuse of discretion.  *United States v.*

*Bradshaw*, 787 F.2d 1385, 1390 (10th Cir.1986);  *United States v. Day*, 830 F.2d 1099,

1106 (10th Cir.1987).  " 'Whether a motion for a mistrial should be granted is within the

discretion of the trial judge because he is in the best position to evaluate the effect of

the offending evidence on the jury.' "  *Day*, 830 F.2d at 1106 (quoting *United States v.*

*Laymon*, 621 F.2d 1051, 1053 (10th Cir.1980)).

Here, the record shows that the offending jurors were excused and there was no evidence that any other juror either heard or was influenced in any way by the comments. The record confirms the Court of Appeal's determination that the jurors "were scrupulous in reporting violations immediately and/or stopping violations at the outset." (*Harrington I* at p. 16). "There is insufficient proof of jury misconduct to overcome the presumption that the jury obeyed its instructions." *Case v. Mondragon*, 887 F.2d 1388, 1392 (10th Cir. 1989) (internal quotation marks and citation omitted). "Surmise and suspicion may not be used to assail the integrity of a jury; it is presumed that jurors will be true to their oath and will conscientiously observe the instructions and admonitions of the court." *United States v. Gigax*, 605 F.2d 507, 515 (10th Cir. 1979) (quoting *Baker v. Hudspeth*, 129 F.2d 779 (10th Cir. 1942)). *See also United States v. Radetsky*, 535 F.2d 556, 570 (10th Cir.1976) (where judge questioned all potential jurors and ascertained that they would be impartial, procedure met the standards for a fair trial). There is no reason to believe that any extraneous information would have "had [a] substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 637. "[T]he constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Rushen v. Spain*, 464 U.S. 114, 118 (1983) (quoting *Smith v. Phillips*, 455 U.S. at 217).

It was not an abuse of discretion for the court to deny Harrington's motion for a mistrial. Harrington has failed to show that he was deprived of an impartial jury and is

not entitled to habeas relief on this claim.

     e.     Harrington's Sixth Claim

Harrington alleges that the state court erred in admitting eyewitness identification of him.  (*See* Amended Petition at pp. 5, 24-27).  On or about March 17, 1994, Harrington filed a Motion to Suppress Out-of-Court and In-Court Identification. (Record, Vol. 1 at pp. 105-07).  The trial court found that the photographic line-up and the physical line-up were not suggestive and denied the motion to suppress.  On direct appeal, the Court of Appeals concluded that the trial court considered "the totality of the circumstances and that these circumstances fully support its conclusion." (*Harrington I* at p. 9) (citing *People v. Staten*, 746 P.2d 1362, 1364 (Colo. App. 1987) ("The threshold question to be determined therefore is whether the totality of the circumstances reveals that the out-of-court identification procedures used were unnecessarily suggestive. If the trial court determines that they were not, then the identification is admissible without further inquiry") (citations omitted)).

Harrington argues that the procedures used in the photographic lineup were impermissibly suggestive and that the trial court erred in declining to reach the second part of the inquiry: that the identification testimony was unreliable.  The court concludes that Harrington is not entitled to habeas relief on either part of this claim.

When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that the identification testimony be reliable. *See, e.g., Manson v. Brathwaite*, 432 U.S. 98,

24

112-14 (1977) (standard is that of fairness as required by the Due Process Clause of the Fourteenth Amendment under the totality of the circumstances) (citations omitted). A defendant is denied his right to due process of law when an in-court identification is based on an out-of-court identification which is so unnecessarily suggestive as to render the in-court identification unreliable. *United States v. Rogers,* 387 F.3d 925, 936 (7th Cir. 2004). "An in-court identification is properly considered by the jury if it does not stem from a constitutionally defective identification procedure, under the totality of the circumstances." *People v. Monroe*, 925 P.2d 767, 771 (Colo. 1996) (citing *Coleman v. Alabama*, 399 U.S. 1, 4-5 (1970)).

"In examining the constitutionality of an identification procedure, a court must address two issues. The first issue is whether the identification procedure is unnecessarily suggestive." *Archuleta v. Kerby*, 864 F.2d 709, 711 (10th Cir. 1989). If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility. *See, e.g.*, *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir.1986) ("if the procedures were not impermissibly suggestive, independent reliability is not a constitutionally required condition of admissibility, . . . and the reliability of the identification is simply a question for the jury") (citations omitted). No further inquiry by the court is required, and "[t]he reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." *Foster v. California*, 394 U.S. 440, 442 n. 2 (1969). *See also Neil v. Biggers*, 409 U.S. 188, 199 (1972) (identification evidence will be admissible if the procedures were not suggestive); *Manson*, 432 U.S. at 114 (same).

Here, the trial court found that there was nothing about the photographic array, the physical line-up, or the procedures used by police that was so unduly suggestive as to create a substantial likelihood of irreparable misidentification that would require suppression of the identification of Harrington.  The facts underlying the state courts' determinations were amply developed at the suppression hearing and have not specifically been challenged by Harrington.  Under federal habeas corpus review, the issue of whether an out-of-court identification procedure is so suggestive that it violates a defendant's due process rights is a mixed question of law and fact.  *Sumner v. Mata*, 455 U.S. 591, 597 (1982).  Post-AEDPA, "state court adjudications on the merits of petitioner's challenges are entitled to deference regardless of whether we classify them as questions of fact, law, or mixed."  *Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003).  The record supports the trial court's ruling.  As the state court decision on the identification claim is consistent with Supreme Court precedent and is not based on an unreasonable determination of the facts in light of the evidence, Harrington is not entitled to habeas relief on his sixth claim.

f.      Harrington's Seventh Claim

Harrington alleges that the prosecution committed a violation under *Brady v. Maryland*, 373 U.S. 83 (1963), by not providing him with the murder weapon that was found by the police while the jury was deliberating.

The record shows that hours before the jury rendered its verdicts, police officers discovered the murder weapon in the possession of a person who had purchased it

from Davis' brother, Rodney Lewis.  Harrington moved for a new trial, arguing that there was "no credible physical or scientific evidence connecting Steven Harrington to the crimes," that "the identification of Steven Harrington rested solely on mistaken eyewitness and circumstantial evidence," that "the circumstances surrounding the recovery of the murder weapon . . . is newly discovered evidence showing that the Jury's Verdict was influenced by false testimony," and that the "circumstances surrounding the recovery of the murder weapon would have bolstered" his alibi defense. (Record, Vol. 1 at pp. 177-78).  The trial court concluded that "the addition of the gun to all of the other evidence certainly would have had a mixed evidentiary value," that "the result of the trial would probably not have been changed if the evidence had been presented," and that "the introduction of the weapon in the Court's estimation would probably not produce a verdict of acquittal at trial."  (Transcript of hearing held August 8, 1994 on Harrington's Motion for a New Trial, at pp. 6-8).  On direct appeal, the Court of Appeals concluded that "the trial court correctly determined that the new evidence, . . . would only have served to inculpate defendant even more." (*Harrington I* at p. 11).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  "To establish a Brady violation, [Harrington] must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *United States v. Summers*, 414 F.3d

1287, 1305-06 (10th Cir. 2005) (internal quotation marks and citation omitted).  "[W]e will reverse the district court only if the suppression of evidence denied the defendant a fair trial." *Summers*, 414 F.3d at 1306.  *See also United States v. Bagley*, 473 U.S. 667, 682 (1985) ("evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); *United States v. Agurs*, 427 U.S. 97, 112 (1976) ("[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.  This means that the omission must be evaluated in the context of the entire record.").  At trial, the parties agreed that Harrington "made a sufficient showing to satisfy the first three requirements."  (*Harrington I* at p. 11).  Thus, this court's analysis rests on whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *Bagley*, 473 U.S. at 682).

Admission of the murder weapon would likely have been more inculpatory than exculpatory.  The evidence as a whole was strong and convincing against both Defendants.  The evidence at trial included a photograph of Harrington holding a virtually identical gun.  Many eyewitnesses credibly identified Harrington.  The eyewitnesses were extensively cross-examined.  Additional physical evidence established that Harrington was present at the crime.  Harrington's expert witness challenged some of that physical evidence.  The jury clearly rejected Harrington's alibi defense.  This court agrees with the Court of Appeals  that, in light of the proof

28

problems for the chain of custody of the murder weapon, the gun "would have had little probative effect . . . ." (*Harrington I* at p. 2).

Harrington fails to show that admission of the murder weapon "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435.  Harrington is not entitled to habeas relief on this claim.

g.      Harrington's Eighth Claim

Harrington alleges that the trial court erred in permitting Dr. Weggs, an oculoplastic surgeon, to testify regarding the victim's memory.  (Amended Petition at pp. 5, 32-33).

The trial court accepted Weggs as an expert in the fields of ophthalmology and oculoplastic surgery, noting that "[a]ny objection to the areas that are not necessarily his specialty go to the weight, not the admissibility of that evidence . . . ." (Trial transcript, May 27, 1994 at p. 161).  Weggs testified in part that "it would not surprise" him that the victim's memory of the crime improved with the passage of time.  (Trial transcript, May 27, 1994 at pp. 175-76).  On direct appeal, Harrington argued that this testimony was beyond the scope of the witness' expertise.  The Court of Appeals determined that the trial court did not abuse its discretion in admitting the testimony. (*Harrington I* at pp. 9-10).

"Habeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional

rights results." *Mayes*, 210 F.3d at 1293 (citation omitted). *See also Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001) ("As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights'") (internal citations omitted).  "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir.1990).

Federal law is highly deferential to trial judges as they decide the reliability and relevancy of expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (abuse of discretion standard applicable to appellate review of federal court's procedures for evaluating reliability of expert testimony as well as to ultimate decision on admissibility); *General Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997) (abuse of discretion standard applicable regardless of whether trial court rules to admit or to exclude expert testimony).

Given the limited nature of its inquiry and the record in this case, the court cannot conclude that the state court contradicted or unreasonably applied Supreme Court authority in determining that the challenged evidence was admissible.  Weggs had 39 years of experience treating patients with traumatic eye injuries.  (Trial transcript, May 27, 1994 at p. 160).  As the Court of Appeals correctly noted, Weggs was "very circumspect in rendering opinions and voluntarily stated, on several

occasions, that he was 'going out of his area' of knowledge and practical experience."

(*Harrington I* at p. 10).  Weggs was subject to extensive cross-examination.  (Trial

transcript, May 27, 1994 at pp. 176-194; 199-202).  The Court of Appeals further

correctly noted that Weggs "gave no opinion concerning the veracity of the victim,"

stating only that "in general, as a person suffering significant head and facial injuries

physically recovered, it was more likely than not that his or her mental processes would

improve." (*Harrington I* at p. 10).  There is no basis for the court to conclude that the

state court's ruling regarding the admissibility of Weggs' testimony undermined the

fairness of Harrington's trial.  This was an issue of state evidentiary rules and this court

defers to the state court's analysis, which was entirely reasonable.  Consequently,

Harrington's claim must fail.


       h.     Harrington's Ninth and Tenth Claims

Harrington claimed in his Crim P. 35(c) motions that he received ineffective

assistance of trial counsel.  Harrington did not receive an evidentiary hearing in state

court on his postconviction claims of ineffective assistance.  Harrington contends that

the state court erred in failing to grant him such a hearing and failing to appoint new

postconviction counsel after his first postconviction counsel withdrew.  (Amended

Petition at pp. 34-38).

"The Sixth Amendment guarantees criminal defendants the effective assistance

of counsel. That right is denied when a defense attorney's performance falls below an

objective standard of reasonableness and thereby prejudices the defense."

*Yarborough v. Gentry*, (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and

*Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> To prove ineffective assistance of counsel under *Strickland*, a petitioner must show (1) that trial counsel's performance was deficient, i.e., that he ⊲fell below an objective standard of reasonableness,' and (2) that ⊲there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' In assessing whether counsel's performance was deficient, we must free ourselves from the ⊲distorting effects of hindsight' by indulging in a strong presumption that counsel acted reasonably. Thus, counsel's performance is not deficient as long as it ⊲falls within the wide range of reasonable professional assistance' and ⊲might be considered sound trial strategy.'

*Parker v. Scott*, 394 F.3d 1302, 1320-21 (10th Cir. 2005) (citations omitted).  Harrington

"has the burden of rebutting the presumption that his counsel acted reasonably."  *Id.* at

1321.

On November 30, 2000, the Court of Appeals reversed the trial court's denial of

Harrington's Crim. P. 35(c) motion and remanded to the trial court to make findings of

fact pursuant to Crim. P. 35(c)(3).  ("*Harrington II*").  Harrington alleged in two Crim P.

35(c) motions (filed on August 19, 1998 and August 20, 1999) that his defense

attorneys at trial: "(1) 'failed to make proper discovery and did not investigate the case

to find witnesses and evidence that would have proven (his) innocence;'  (2) failed to

subpoena four alibi witnesses; (3) failed to properly question the prosecution's

witnesses; (4) 'failed to subpoena witnesses and evidence that would have shown that

he was innocent of the crime charged;' (5) failed to present any 'competent, or logical

[support] to [his] alibi [defense];' (6) 'failed to adequately prepare for trial period, and

32

made numerous failings at and during the trial, including a failure to object, disclosure

of client's confidences and many more irreversible errors causing his conviction;' (7)

failed to visit defendant's residence and location on the night of the murder; (8) advised

defendant not to testify 'even though he had entered a plea of not guilty;' and (9) failed

to request protection of unsequestered jurors exposed to a 'media frenzy of untruths.' "

(*Harrington III* at pp. 3-4).   On June 26, 2001, the trial court denied without a hearing

Harrington's Crim. P. 35(c) motions.   (Court's Order Re: 35(c) Remand dated June 26,

2001, attachment to Petition).   The trial court ruled that Harrington had asserted only

"unsubstantiated, general, conclusory allegations" rather than facts that would provide

a basis for relief.   (Court's Order Re: 35(c) Remand dated June 26, 2001 at ¶ 10 (citing

*People v. Simon*, 826 P.2d 382 (Colo. App. 1991) ("motion under Crim. P. 35(c) may be

dismissed without a hearing if the motion, the files, and the record clearly establish that

the defendant is not entitled to relief") (citation omitted)).   The trial court further found

that even if trial counsel had been ineffective, Harrington had made no showing of a

denial of fundamental fairness or that the outcome of the trial would have been

different.   (Court's Order Re: 35(c) Remand dated June 26, 2001 at ¶ 11).

On June 12, 2003, the Court of Appeals affirmed the trial court's ruling.

("*Harrington III*").   The Court of Appeals agreed with the trial court that Harrington had

"provided no particulars regarding the failed discovery or investigation."   ("*Harrington

III*" at p. 4).   For example, Harrington "provided no particulars regarding the failed

discovery or investigation, . . . did not indicate what [the unsubpoenaed witnesses']

testimony would have been," did not "provide the names, availability, or proposed

testimony of any other witnesses who he alleged, again without specificity, would have been helpful to his defense," and Harrington's "assertion that his attorneys' failure to visit his home and whereabouts on the night of the crime was vague and completely unsubstantiated." ("*Harrington III*" at p. 4). The Court of Appeals ruled that even if Harrington's allegation that his counsel instructed him not to testify were true, "he suffered no prejudice because the record indicates that the trial court gave him a thorough advisement pursuant to <u>People v. Curtis</u>, 681 P.2d 504 (Colo. 1984)." ("*Harrington III*" at p. 4). Further, the Court of Appeals held that it was "apparent from the record that the evidence against Defendant was compelling and that there was no reasonable probability that deficient conduct by counsel, if any, could have altered the outcome in this case." ("*Harrington III*" at p. 5).

The Colorado courts' rulings were consistent with state law. *See People v. Simpson*, 69 P.3d 79, 81 (Colo. 2003) ("[t]o warrant a hearing, a defendant need only assert facts that, if true, would provide a basis for relief") (citations omitted); *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) ("Because relief for ineffective assistance of counsel requires a criminal defendant to prove both deficient representation and prejudice, denial of the motion without a hearing is justified if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the Strickland test"); *People v. Rodriguez*, 914 P.2d 230, 255 (Colo. 1996) ("party seeking postconviction relief pursuant to Crim. P. 35 is entitled to a prompt evidentiary hearing unless the motion, the files, and the record clearly establish that the allegations presented in the defendant's motion are without

merit and do not warrant postconviction relief") (internal quotation marks and citations omitted).

The state courts' rulings were also consistent with federal law.  As Harrington did not allege adequate grounds for relief, he was not entitled to an evidentiary hearing before the trial court.  The record before the trial court established that the allegations presented in Harrington's postconviction motions were without merit and did not warrant postconviction relief.  The state courts followed their own procedures and thus did not violate due process by deciding the matter on the basis of the records and pleadings.  *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (if a state court did not follow its own rules, this error will not give rise to habeas relief unless failure to follow the rules also constituted a violation of due process guaranteed by the federal constitution).  Further, all of Harrington's ineffective assistance claims "were properly rejected on lack of prejudice grounds, obviating the necessity of an evidentiary hearing." *Moore v. Reynolds*, 153 F.3d 1086, 1108 (10th Cir. 1999) (citing *Hatch v. State of Oklahoma*, 58 F.3d 1447, 1471-72 (10th Cir. 1995) (rejecting habeas petitioner's request for evidentiary hearing where petitioner failed to put forth any specific allegations of error that, if true, would entitle him to relief).  The court finds no error on the part of the state  court in failing to conduct an evidentiary hearing.

Regarding Harrington's allegation of ineffective assistance of counsel in postconviction proceedings (*see* Amended Petition at pp. 5, 34; Response to Supplement to Answer at pp. 1-4), Harrington does not have a federal constitutional right to assistance of counsel in postconviction proceedings. *Coleman v. Thompson*,

501 U.S. 722, 752 (1991);  *Parkhurst v. Shillinger*, 128 F.3d 1366, 1371 (10th Cir.

1997) (citation omitted).  He has only a limited right under state statute to such

assistance.  *See People v. Breaman*, 939 P.2d 1348, 1350 (Colo. 1997) (Colorado

Supreme Court has not recognized a right to counsel with respect to Crim. P. 35(c)

motions) (citations omitted);  *People v. Hickey*, 914 P.2d 377, 378 (Colo. App. 1995)

(Colorado Court of Appeals has recognized "a limited statutory right" to counsel in a

postconviction proceeding while acknowledging that there is no constitutional right to

counsel in a postconviction proceeding);  *Duran v. Price*, 868 P.2d 375, 379

(Colo.1994) (while a district court has the authority to appoint counsel in Crim. P. 35(c)

proceedings, it may decline to exercise that authority when the asserted claim is wholly

unfounded)  (citations omitted).  Any alleged failure to effectively assist Harrington in

postconviction proceedings would therefore not amount to a constitutional violation and

cannot provide a basis for habeas relief.  *Parkhurst v. Shillinger*, 128 F.3d at 1371.  *See*

*also* 28 U.S.C. § 2254(I) (expressly barring relief for claims alleging ineffective

assistance of counsel in state collateral post-conviction proceedings).  Likewise,

Harrington's claim of error for failure to appoint him new postconviction counsel cannot

provide a basis for habeas relief.  Harrington has failed to establish grounds for habeas

relief on his ninth and tenth claims.


I.      Harrington's Request for an Evidentiary Hearing in Federal Court

        Harrington seeks an evidentiary hearing in federal court to establish "the

existence of the omissions by defense counsel which were below the standard of

professional competence for lawyers practicing in state courts" and because

"prosecutorial misconduct of withholding exculpatory evidence . . . [is] based on facts

outside of the record.  (Amended Petition at pp. 41, 42).

Because the trial court denied Harrington's request for an evidentiary hearing on

his Crim P. 35(c) motions, § 2254(e)(2) does not apply.  *See Miller v. Champion*, 161

F.3d 1249, 1252-53 (10th Cir. 1998) ("We now join every other circuit that has

confronted this question and hold that where, as here, a habeas petitioner has

diligently sought to develop the factual basis underlying his habeas petition, but a state

court has prevented him from doing so, § 2254(e)(2) does not apply") (citations

omitted).  Where the AEDPA does not preclude an evidentiary hearing, a petitioner is

entitled to an evidentiary hearing in federal court only if "his allegations, if true and not

contravened by the existing factual record, would entitle him to habeas relief."  *Cannon*

*v. Mullin*, 383 F.3d 1152, 1175 (10th Cir. 2004).  "But the factual allegations must be

'specific and particularized, not general or conclusory.' "  *Anderson v. Attorney General*

*of Kansas*, ___ F.3d ___, 2005 WL 2304966, No. 04-3242 slip op. at 11 (10th Cir.

(Kan.) Sept. 22, 2005) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th

Cir.1995)).  "[F]ederal courts have discretion to grant a hearing or not" and "[i]n

exercising that discretion, courts focus on whether a new evidentiary hearing would be

meaningful, in that a new hearing would have the potential to advance the petitioner's

claim."  *Campbell v. Vaughn*, 209 F.3d 280, 286-87 (3d. Cir. 2000).  A petitioner must

explain how an evidentiary hearing will advance the habeas claim, or " forecast any

evidence beyond that already contained in the record that [will] help his cause."

*Campbell*, 209 F.3d at 287 (internal quotation marks and citation omitted).  "[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson*, No. 04-3242 slip op. at 11 (citing *Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003), *cert. denied*, 540 U.S. 1035 (2003)).

Harrington does not adequately explain what evidence or materially disputed factual issues would be illuminated by an evidentiary hearing.  Harrington's allegations of ineffective assistance of trial counsel are general and conclusory (*see* Amended Petition at pp. 35, 37), as well as contradicted by the record.  As the court has determined, above, that Harrington has failed to demonstrate that he is entitled to habeas relief, his request for an evidentiary hearing is properly denied.  To the extent that Harrington's request for an evidentiary hearing rests on his allegation of ineffective assistance of counsel in postconviction proceedings (*see, e.g.,* Response to Supplement to Answer (doc. # 52) at p. 4), a hearing is properly denied because there is no federal constitutional right to assistance of counsel in postconviction proceedings. *See Parkhurst v. Shillinger*, 128 F.3d at 1371; 28 U.S.C. § 2254(I).

j.      Harrington's Request for Discovery

In the alternative to an evidentiary hearing in federal court, Harrington seeks to conduct discovery, in the form of depositions of former trial counsel and postconviction counsel and testimony from Denver Police Detective Shott, Rodney Lewis, and Stefon Felder.  For the reasons explained in this Recommendation, above, Harrington's

Amended Petition fails and his request to conduct discovery is properly denied.

D.     Conclusion

In sum, IT IS RECOMMENDED that Harrington's "Amended Memorandum of Law in Support of Applicant's Writ of Habeas Corpus Petition Pursuant to 28 U.S.C. Section 2254" (Amended Petition) (filed August 18, 2005) (doc. # 49) be DENIED and this civil action be dismissed with prejudice.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 31st day of October, 2005.

40

BY THE COURT:


s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge


1.      Harrington was represented in this case by Madeline S. Cohen from June 21, 2004 to February 14, 2005 and by Robert Gregg Levitt from February 16, 2005 to present.

2.      The prosecution presented testimony later in the trial from a case detective who explained that Jheri curls are a kind of hair style.  (Trial transcript May 31, 1994 at pp. 266-69).